(No. 24033.—

THE PEOPLE *ex rel.* JOSEPH L. GILL, County Collector, Appellee, *vs.* FLORENCE R. WHITE *et al.* Appellants.

*Opinion filed October 15, 1937—Rehearing denied Dec. 8, 1937.*

Scott, MacLeish & Falk, Robert N. Holt, Winston, Strawn & Shaw, Adams, Nelson & Williamson, and Richard C. Beckett, (Homer H. Cooper, Robert S. Cushman, Leland K. Neeves, and Pomeroy Sinnock, of counsel,) for appellants.

Thomas J. Courtney, State's Attorney, Marshall V. Kearney, William T. Crilly, Manuel E. Cowen, Jacob Shamberg, Richard S. Folsom, Frank S. Righeimer, Ralph W. Condee, and Albert Fink, for appellee.

Mr. Justice Herrick prepared the opinion of the court:

The county collector of Cook county applied to the county court for judgment against the property of the appellants for delinquent taxes for the year 1934. Appellants filed objections attacking the validity of the board of education corporate levy. The objections were overruled and judgment of sale entered. The objectors bring the record here.

The objections in question strike at the validity of the levy because the objectors urge the levy included (1) taxes for interest on tax anticipation warrants and that such items are illegal and void because (a) the board of education unlawfully appropriated for interest on tax anticipation war-

rants as though such interest was a general liability, instead of a charge solely against the taxes in anticipation of which the warrants were issued, and (b) the appropriations for interest on tax warrants do not state separately the amount appropriated for interest on each year's tax warrants as required by section 135½ of the general School law, (State Bar Stat. 1935, chap. 122, par. 159(1),) and (2) taxes produced by the so-called "Z" accounts. As to the latter items it is alleged the appropriations do not indicate the fund from which each amount appropriated is to be paid as required by said section 135½. That section, so far as material here is: "Such school budget shall set forth estimates, by classes, of all current assets and liabilities of each fund of such board, as of the beginning of said fiscal year, and the amounts of such assets available for appropriation in such year, either for expenditures or charges to be made or incurred during such year or for liabilities unpaid at the beginning thereof. Estimates of taxes to be received from the levies of prior years shall be net. * * * Estimates of the liabilities of the respective funds shall include * * * (b) the principal of all anticipation tax warrants and all temporary loans and all accrued interest thereon unpaid at the beginning of such fiscal year. * * * Such school budget shall also set forth detailed estimates of all· taxes to be levied for such year and of all other current revenues to be derived from sources other than taxes, including State contributions, rents, fees * * * which will be applicable to expenditures or charges to be made or incurred during such year. * * * All such estimates shall be so segregated and classified as to funds, and in such other manner as to give effect to the requirements of law relating to the respective purposes to which said assets and taxes and other current revenues are applicable, to the end that no expenditure shall be authorized or made for any purpose in excess of the money lawfully available therefor. Such annual school budget shall specify (a) the several organization

units, purposes, and objects for which appropriations are made, (b) the amount appropriated for each organization unit, purpose or object, and (c) the fund from or to which each amount appropriated is to be paid or charged, and shall include appropriations for (a) all current expenditures or charges to be made or incurred during such fiscal year, including interest to accrue on anticipation tax warrants and temporary loans; * * * (d) all other liabilities, including the principal of all anticipation tax warrants and all temporary loans and all accrued interest thereon, incurred during prior years and unpaid at the beginning of such fiscal year;" etc.

In connection with the specific objections raised by appellants it must be borne in mind that section 191 of the Revenue Law (State Bar Stat. 1935, chap. 120, pp. 2647, 2648,) provides "No error or informality in the proceedings of any of the officers connected with the assessment, levying or collection of the taxes, not affecting the substantial justice of the tax itself, shall vitiate or in any manner affect the tax or the assessment thereof." Furthermore, the law rightfully presumes that the taxing authorities will discharge the duties imposed upon them by law. *People* v. *110 South Dearborn Street Corp.* 363 Ill. 286; *People* v. *Sandberg Co.* 277 id. 567.

The challenged items for interest on tax warrants of the educational, building and playground funds, as the same appear on page 752 and elsewhere in the board's 1934 appropriation ordinance, are as follows: Interest on temporary loans: Educational fund, $3,750,000; building fund, $800,000; playground fund, $35,000. The temporary loans so referred to are admittedly tax anticipation warrants.

On page 736 of the 1934 appropriation ordinance is shown a "summary statement of resources and appropriations for the year 1934, exclusive of resources and appropriations for prior years." Under this title is stated the estimated resources itemized by funds, including educa-

tional, building, playground and like objects, presenting, as to each fund, the amount of the surplus or deficit, the miscellaneous revenue, the 1934 tax levies and, lastly, the resources available for appropriation, being an amount representing the total of the preceding items. Under the title, "Balance sheets by funds" on page 737 of the ordinance appears the sub-title "Statement of estimated current assets and liabilities as of January 1, 1934, showing the amounts of such assets available for appropriation in 1934." Thereunder is set forth as to the educational fund, *inter alia,* the total amount of taxes receivable, net, segregated as to each of the prior years 1928 to 1933, both inclusive, the total amounts of the principal of the outstanding unpaid tax warrants issued against the taxes levied for each of such years and, separately stated, the accrued interest on the tax warrants as to each of such years.

On pages 738 to 741 are like showings pertaining to the building, free text-book, playground, teachers' pension and retirement, bond redemption and interest, school lunch room and special funds. It appears from the record that the appropriation ordinance also included the estimated amount of the interest to accrue in 1934 on tax warrants which it was anticipated would be issued in 1934 against the taxes of that year. The uncontradicted evidence in the record is that, in the past, tax anticipation warrants and the accrued interest thereon, have been paid only from the receipts of taxes for the years against which such warrants were issued, except in the one instance when the proceeds of the bonds involved in *Berman* v. *Board of Education,* 360 Ill. 535, were used for that purpose.

The statement of the different groupings and amounts appropriated is carried *verbatim* into the tax levy. Inasmuch as the appropriation ordinance set forth the total amount of the uncollected taxes for the years 1928 to 1933 as assets available for appropriation, it was highly important to the accuracy of the ordinance that the amount be

disclosed of the outstanding tax anticipation warrants and notes, with accrued interest severally issued against the tax levies for such years, with the unpaid accrued interest. Otherwise the ordinance would be misleading. There was no appropriation of funds made by the ordinance to pay outstanding tax anticipation warrants and notes, or the interest thereon, as general liabilities.

The facts in this case, in so far as subdivisions (*a*) and (*b*) of appellants' objection (1) are concerned, are the same as those appearing in *People* v. *Peterson,* 366 Ill. 613, where it was asserted by the objector that there was a levy to pay tax anticipation warrants, and interest thereon, as a general obligation of the municipality, and that such levy was illegal. We there held that in so far as the appropriation ordinance and levy dealt with tax anticipation warrants, and the interest thereon, the ordinance was in compliance with the provisions of section 135½ of the general School law, and our holding in that case is decisive both of branches (*a*) and (*b*) of appellants' first objection. There was no levy here to pay, as general debts, tax anticipation warrants or interest thereon. The county court did not err in overruling that objection.

The legality of the so-called "Z" account appropriations, totalling $2,023,042, in the ordinance is also challenged. These accounts are based upon various items tabulated in the ordinance with the key letter "Z" immediately followed by a dash or hyphen and then a number, all of which appear to the left of the statement relating to the purpose and amount for which an appropriation purports to have been made. There are a large number of these entries. It would consume much space and would serve no useful purpose to set forth this account in detail. For the purpose of understanding more readily the system employed by the board in the keeping of its accounts and showing the purposes and objects for which appropriations were made, we set forth a few of the twenty-seven different "Z" items

enumerated in the schedules set up in the appropriation or-
dinance. The numbers at the left of the letter "Z" are our
own and are used to designate the items complained of, in
their numerical order, as set forth in appellants' brief:

| 2 | Z-550 | School fund expense | $ 30,000.00 |
|---|---|---|---|
| 3 | Z-400 | Tax warrant expense | 150,000.00 |
| 5 | Z-400 | Miscellaneous | 300.00 |
| 6 | Z-513 | Loss by fire and burglary | 1,400.00 |
| 7 | Z-591 | Supplies and equipment | 19,243.00 |
| 16 | Z-100 | Free text-books | 20,547.00 |
| 19 | Z-90 | Fuel | 5,000.00 |
| 23 | Z-600 | Rent | 5,000.00 |
| 12 | Z-600 | Civil Works Administration: Materials and supplies | 250,000.00 |

It is not charged that these "Z" account appropriations
were excessive or were appropriated from the wrong fund
or that they caused an increase in the amount of the levy.
The substance of the objection made is, that the tax-payer
could not ascertain from the budget, alone, the funds from
which the "Z" account appropriations should be paid. An
examination of these tabulated "Z" account items discloses
that most all of them show the fund against which they
were charged,—e. g., items 2, 3, and 19 are plainly charge-
able against the educational fund, item 12 is clearly a lia-
bility of the building fund. The language used in the
budget is sufficient to identify the funds out of which each
appropriation is to be paid except the items above num-
bered 5, 6, 7 and 23. Obviously, these cannot be so allo-
cated. To determine whether these entries can properly
be identified as to the accounts against which they might
be charged requires some extrinsic evidence.

In *People* v. *Arnold Bros.*, 282 Ill. 305, the objection
made was that certain appropriations in the ordinance were
illegal because they did not specify the several objects and
purposes, or the amount required for each object and pur-
pose. We there held that a specific reference in the ordi-
nance to an official manual explanatory of the various sym-

bols used therein, by reference to which the desired information could easily be found, was sufficient. Similarly, in *People* v. *Mills Novelty Co.*, 357 Ill. 285, where the appropriation was in a lump sum for *"Hospital nursing fund—* For the purpose of defraying necessary expenses for nursing services at the county general and psycopathic hospitals, provided that said expenditures shall be in accordance with the contract provisions entered into with the Cook County Hospital School of Nursing (board proceedings August 15, 1929, p. 1534) ; and provided further, that all expenditures shall be in accordance with the detailed budget submitted by the Cook County Hospital School of Nursing and as approved by the board of county commissioners;" etc., we held the reference to the contract was sufficient to overcome the objections made.

Here the appropriation ordinance did not specifically refer to a manual but at the top of each page of the budget written into the ordinance where these items appear was printed in bold type, "Items of appropriation under standard accounts." In addition, on the left margin of each page were letters and figures in connection with the various items indicating their probable use as symbols. The record shows that in June, 1914, the board of education, in order to provide accurate and detailed information for the benefit of the members of the board, its executive officers and for tax-payers, as to the cost of conducting each unit, adopted a form of budget employing a system of so-called standard accounts to be used in the preparation of future appropriation budgets. This system, with such improvements and modifications as experience indicated would promote efficiency, has since been used. The term "organization unit" therein, designates the various units into which the school system was divided for the purpose of accounts, such as "debt service and fixed charges," "administration building and general control," "special accounts not appropriated for elsewhere," etc. Each school is a separate "organization

unit." Several thousand separate accounts make up the budget. For the sake of economy and for rapid compilation of accurate information, mechanical means were adopted. All expenditures were therefore coded and symbols or numbers provided for each. This was done by setting up a unit, standard account and function number for each appropriation or expenditure in the budget. "Standard accounts" is the name of the system of accounting adopted and used by the board. This method includes the various organization units, code numbers, letters and symbols, each having a particular significance. In this plan as adopted, the letter "Z," as shown by the record, indicates miscellaneous or contingent expenditures for which no appropriation is otherwise made. The number opposite the "Z" is called the functional number which is assigned to the various funds.

A manual introduced in evidence was identified by the classification clerk in the accounting bureau of the board as a correct copy of the original or master manual on file in his office, and proof was made that he was the keeper of the original. The manual contained a classification of expenditures as shown by it and as further explained by the auditor of the board who had served in that capacity since 1914. It appears therefrom that under "Summary classification of standard accounts," A referred to salaries and wages, B to fees and compensation, Z referred to contingencies, miscellaneous and like items, and from "functions" that numbers were allotted to and used as symbols for funds. Nos. 1 to 41, 90 to 100, 400 to 474, and 550, designated the educational fund; 600, 700 and 900, the building fund; 511 to 522, inclusive, the playground fund, 50 to 55, the text-book fund, and 591, the school lunch room fund. Evidence appears in the record that multigraph copies of this master manual were kept in the accounting office for use by the machine operators therein and were at all times available to any of the public request-

ing a copy. There was some conflict in the evidence as to whether the copy furnished the appellants at their request was in fact a true copy of the master manual. The record discloses that some modification or adaptation of the numbers and symbols was sometimes made to meet changing conditions but the manual was never altered as to a particular budget after its adoption.

By reference to the symbolic function numbers used therein, it will be seen that item 5, Z-400, is chargeable against the educational fund; that item 6, Z-513, is chargeable against the playground fund; that item 7, Z-591, is chargeable against the school lunch room fund, and item 23, Z-600, is chargeable against the building fund. There is an apparent error in item 16 which appears as "Z-100 free text-books," where the key number should be one from 50 to 55 to agree with the manual, but obviously the description "free text-books" is so sufficiently informatory that no one would be misled by the clerical error in assigning the wrong function number to this appropriation item. If there were any doubt about any of the other items listed in appellants' objection, a reference to the manual symbols and like key-writings and records would give the information from which identification could readily and accurately be made of the funds against which each appropriated sum was charged, and would furnish the tax-payer with adequate knowledge as to the purposes and objects for which each appropriation was made. This met the requirements of the statute.

The judgment of the county court of Cook county, overruling appellants' objections was right, and is affirmed.

*Judgment affirmed.*